UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WATCHUNG SPRING WATER CO., INC., *Plaintiff*, v. NESTLÉ WATERS NORTH AMERICA INC., *Defendant*. | Civil Action No. 14-cv-04984 (PGS)(DEA) **MEMORANDUM AND ORDER** |

This matter comes before the Court on Plaintiff Watchung Spring Water Co., Inc.'s ("Plaintiff" or "Watchung") application by order to show cause for a preliminary injunction (Dkt. Entry 1). Having reviewed the submissions of the parties, and carefully considered the arguments proffered therein and at the hearing convened before the Court on October 16, 2014, and for the reasons set forth below, and good cause shown, the Court hereby denies Watchung's PJ Application, and grants in part, and denies in part Defendant Nestlé Waters North America Inc.'s ("Defendant" or "Nestlé") cross-motion to dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND**

This matter arises out of a distributorship agreement ("Agreement") entered into by the parties in 1994, and according to which Watchung operated as the exclusive distributor of products manufactured or otherwise provided by Nestlé within a defined geographic area. Such products include, but are not limited to, large bottles of Great Bear, Poland Spring, and Deer Park water, as well as water coolers. The Agreement provided, *inter alia*, that in exchange for Watchung's voluntary relinquishing of its exclusive distributorship of one of Nestlé's products in several areas of New Jersey, Watchung would be the exclusive distributor of the same, and other,

Nestlé products within a different geographic territory, which included the counties of Atlantic, Cumberland, Monmouth, Cape May, Mercer, and Ocean (the "Watchung Territory"). (Plaintiff's Verified Complaint ("VC") at ¶ 16.) The Agreement also provided that Watchung would enjoy the exclusive rights to sell and lease equipment associated with Nestlé Products, as well as service such equipment within the Watchung Territory. (*Id*.) Watchung thereafter relocated its operations from Northern New Jersey, in which it had historically operated, to Southern New Jersey, where it established a new facility. (*Id*. at ¶ 18.) Absent lawful termination, the Agreement was to automatically renew "for ten successive ten-year periods" following its initial ten year term. (*Id*. at 20; Exhibit A ("Distributor Agreement") at Article XVI.)

On May 16, 2014, Jodi Elliot ("Elliot"), a Director in Nestlé's Business Development Department, sent a letter to Andrew Berliner ("Berliner"), President of Watchung, terminating, and confirming that Nestlé did not intend to renew, the Agreement. (VC at ¶ 60; Exhibit I.) The letter provided, in relevant part:

> This letter is being sent under Article XVI of the [Agreement] and constitutes [Nestlé's] formal, written notice that [Nestlé] does not intend for the [Agreement] to renew beyond the current term. Consequently, the [Agreement] will continue until December 31, 2014 at which point it will terminate in accordance with its terms.

(*Id*.) On July 10, 2014, Nestlé transmitted to Berliner a proposed new agreement. (VC at ¶ 62; Exhibit K.) By responsive letter dated July 28, 2014, Berliner rejected the proposed agreement on the ground that the new arrangement envisioned by the proposal would render Watchung a non-exclusive distributor in the same territory in which it had operated over the past sixty years. (*Id*. at ¶ 64; Exhibit L). The letter further requested that Nestlé promptly inform Watchung if it would reconsider its position with respect to the new, non-exclusive, distributor arrangement. (*Id*.) To date, Nestlé has not responded to Berliner's July 28, 2014 letter.

Watchung initiated the instant action on August 7, 2014, appending to its Verified Complaint an application by order to show cause for a preliminary injunction (Dkt. Entry 1). Nestlé responded by filing an opposition brief to Plaintiff's preliminary injunction application, and asserted a cross-motion to dismiss the Verified Complaint in its entirety for failure to state a claim for which relief may be granted.  For the reasons set forth below, and for good cause shown, Plaintiff's application for preliminary injunctive relief is DENIED, and Defendant's cross-motion to dismiss is GRANTED in part, and DENIED in part.

## DISCUSSION

### I. Watchung's Application for Preliminary Injunctive Relief

#### A. Legal Standard

The standard for a preliminary injunction requires the plaintiff to establish the following four elements: (1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002).  Courts have noted that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2948, at 129-130 (2d ed. 1995)). Additionally, the Supreme Court has held that "[a] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter v. NRDC, Inc.*, 192 S. Ct. 365, 375 (2008).  Furthermore, a preliminary injunction may not be issued where there are disputed issues of fact. *Gruntal & Co. v. Steinberg*, 843 F. Supp. 1, 15 (D.N.J. 1994).  It is

important to bear this high standard in mind in the analysis of each element of the test for granting a preliminary injunction.

Because the Court's determination with respect to the first factor is dispositive as to Plaintiff's application, a lengthy analysis under the remaining factors is not warranted. Although the Court will weigh whether Plaintiff has carried its burden of demonstrating a likelihood of success on the merits, at this early juncture in the litigation, the Court "generally does not go into the merits any farther than is necessary to determine whether the moving party established a likelihood of success." *Id*. (quoting *Child Evangelism Fellowship*, 386 F.3d at 524).

### 1. Reasonable Likelihood of Success on the Merits

In seeking to demonstrate a likelihood of success on the merits of its claims, Plaintiff argues that (1) the Agreement created a franchise, thereby triggering the application of the New Jersey Fraudulent Practices Act ("FPA" or the "Act"), N.J.S.A. § 56:10-1, *et seq*. (West 2014), which would preclude Nestle from terminating the Agreement absent sufficient cause; and, alternatively, that (2) Nestlé improperly terminated the Distribution Agreement. For the reasons that follow, the Court determines that Plaintiffs have failed to show undisputed facts sufficient to support a finding of a likelihood of success on the merits.

Whether an agreement contains an express invocation of the term "franchise" is not determinative of the issue of whether, in fact, a franchise exists. Rather, to be afforded the rights of a franchisee, a plaintiff must establish the following statutory elements required for the existence of a franchise: (1) a "community of interest" between the franchisor and the franchisee; (2) the franchisor's grant of a license to the franchisee; and (3) the parties' contemplation that the franchisee would maintain a "place of business in New Jersey." *Beilowitz*, 233 F. Supp. 2d at

4

639-40; N.J.S.A. §§ 56:10-3, 10-4.  Moreover, the FPA applies only to franchises of a certain size:

> (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise.

N.J.S.A. § 56:10-4.  Although the parties do not dispute that Watchung satisfies these two requirements of the Act, there is a hotly contested factual dispute as to whether Plaintiff maintains a "place of business" in New Jersey.  (*See also* VC at ¶ 52.)

### a. Whether Watchung Maintained a Place of Business in New Jersey

Nestlé contends that its relationship with Watchung is not subject to the FPA on the ground that Watchung does not maintain a "place of business" in New Jersey within the meaning of the Act.  Specifically, Nestlé posits that Watchung can point to no provision of the Agreement that either (1) expressly requires that it establish and maintain a "place of business" in New Jersey, or (2) evinces that it was within the contemplation of the parties at the time they entered into the Agreement that Watchung would do the same.  Moreover, Nestlé argues that the facility in fact maintained by Watchung is of a type that is specifically excluded from the statute's definition of "place of business," namely, a warehouse.  Watchung contends that, contrary to Nestlé's assertions, the facility it maintained was, indeed, of a type consistent with the FPA's definition of "place of business."  In addition, Watchung argues that, because Watchung's exclusive distribution rights were confined to a fixed geographic area, it must have necessarily been within the contemplation of the parties that Watchung would maintain a "place of business" within that territory.

The FPA defines "place of business" as:

5

> a fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services. Place of business *shall not mean an office*, *a warehouse*, *a place of storage*, a residence or a vehicle.

N.J.S.A. 56:10-3(f) (emphasis added). Accordingly, by the express language of the statute, the FPA's protections are available where the performance of the franchisee's business activities either contemplates or requires a New Jersey place of business. N.J.S.A. 56:10-4(1); *see also Ocean City Exp. Co., Inc. v. Atlas Van Lines, Inc.*, Civ. No. 13-1467, 2014 WL 654589, at *5 (D.N.J. Feb. 19, 2014). More simply stated, the arrangement between Watchung and Nestlé would be subject to the Act if the Agreement either required a New Jersey place of business, or the parties reasonably anticipated that Watchung would establish and maintain a place of business in New Jersey. Accordingly, the statutory requirement is satisfied if the parties "considered[ed] . . . a fixed business location for the sale of the franchisor's products." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 349 (N.J. 1992) (quoting *Cassidy Podell Lynch, Inc. v. SnyderGeneral Corp.*, 944 F.2d 1131, 1145 (3d Cir. 1991)).

The New Jersey Supreme Court has emphasized that the statute's definition "ensures that only those businesses that operate as genuine franchises will obtain protection of the Act." *Id.* at 349. Indeed, "there must be a *sales* location in New Jersey. Mere *distribution* through an office or warehouse would not qualify." *Id.* (quoting *Greco Steam Cleaning, Inc. v. Associated Dry Goods Corp.*, 257 N.J Super. 594, 598 (Ch. Div. 1992)) (emphasis added). This has been understood to mean that "some substantial level of marketing to the customer or other sales-related interplay with customers at the location" is required. *Fischer Thompson Beverages, Inc. v. Energy Brands Inc.*, Civ. No. 07-4585, 2007 WL 3349746, at *3 (D.N.J. Nov. 9, 2007). In sum, the "place of business definition "contemplates a location where selling is a *major* activity

– a particular kind of selling involving the interplay of goods on display, the physical presence of the customer and the selling efforts of the vendor." *Ocean City Exp. Co.*, 2014 WL 654589, at *5 (quoting *Liberty Sales Assoc., Inc. v. Dow Corning Corp.*, 816 F. Supp. 1004, 1009 (D.N.J. 1993)).

The parties strenuously argued the issue of whether Watchung's facility met the Act's definition of "place of business" such that its protections would apply to the arrangement in place between them.  As an initial matter, the Court takes notice of the conspicuous absence from the Agreement of any provisions expressly requiring Watchung to establish and maintain a place of business within New Jersey.  Watchung, however, would have the Court infer that it was fairly within the contemplation of the parties that Watchung would do so by cobbling together various provisions of the Agreement.  Specifically, Watchung relies on Article II(a)(ii) of same, which provides that Watchung will:

> Maintain a place (or places) of business having adequate facilities for storing, loading and unloading [Nestlé's products] and be prepared to load and unload [Nestlé] trailers without unreasonable delay.

Watchung asserts that the phrase "without unreasonable delay" necessarily implies that the parties contemplated that the "place of business" to be maintained by Watchung would be situated in New Jersey.  Additionally, Watchung argues that, because the Agreement was for an exclusive distributorship within a fixed geographic territory within New Jersey, the parties must have contemplated that Watchung would establish and maintain an intrastate "place of business." Although the Court finds Watchung's contentions to be reasonable, there nonetheless remains a factual dispute as to this issue.  Perhaps most importantly, however, Watchung's facility may not comport with the construction of the term "place of business" under controlling decisional law, and, accordingly, may be excluded from the Act's definition.

As Watchung noted that regular and substantial sales occurred at its "place of business," the Court focused on the nature and volume of such activity during oral argument. Counsel for Watchung insisted that direct sales to customers comprised much of the activity occurring at the Watchung facility. When pressed, however, counsel was forced to concede, and without reference to concrete sales figures or records, that approximately forty to fifty customers per month appear at the facility either for the purpose of making a direct purchase, or to have their equipment serviced. Moreover, counsel agreed with the Court's impression that the vast majority of the Watchung facility is regularly used as a warehouse for storage of Nestlé's and other manufacturers' products. Indeed, counsel did not deny that the Watchung facility operates predominantly as a warehouse. Rather, counsel argued that the number of sales transactions occurring there is sufficient for this Court to find that the facility maintained by Watchung is a "place of business" within the meaning of the statute. Counsel's representations to the Court that the volume of sales activity was "not nothing, not zero percent, and not one percent," however, suggests to the Court that sales were ancillary to the primary and principal function of the facility as a warehouse. Indeed, at first glance, this appears to fall far short of the substantial level of sales and customer interplay called for by the decisional law referenced above. *See Id*. Moreover, the terms of the Agreement themselves simply call for the maintenance of what can only fairly be described as a warehouse. Nonetheless, the Court would be required to conduct a hearing in order to determine, specifically, whether the Watchung facility constitutes a "place of business" within the meaning of the FPA. Accordingly, the Court's determination with respect to this issue does not approach the merits, and is instead limited to weighing whether Watchung has adequately carried its burden under the preliminary injunction inquiry. Given the presence

of significant, outstanding factual issues concerning the eligibility of the Watching facility for "place of business" status under the FPA, the Court concludes that Watchung has failed to do so.

Because Watchung cannot carry its burden, even under the more permissive standard employed when weighing an application for preliminary injunctive relief, of clearly demonstrating the existence of a franchise, and, in turn, a likelihood of success on the merits, the preliminary injunction application is hereby denied. Accordingly, the Court need not reach a determination as to whether the remaining predicate showings for the existence of a franchise have been made by Watchung. Similarly, the Court need not conduct further analysis as to whether the remaining prongs under the preliminary injunction inquiry have been satisfied.

## II. Nestlé's Cross-Motion to Dismiss

### A. Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See*

*In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

  **B.**  **Application**

  In the Verified Complaint, Watchung alleges and seeks, *inter alia*, (1) violation of the FPA;[1] (2) declaratory relief and an injunction; (3) breach of the covenant of good faith and fair dealing; (4) tortious interference with economic advantage; and (5) breach of contract. (VC at ¶¶ 87-114.) Nestlé seeks to have the Verified Complaint dismissed in its entirety for failure to state

---

[1] As noted above, disputed factual issues remain concerning whether the facility maintained by Watchung is a "place of business" within the meaning of the FPA. Accordingly, the Court to conclude that dismissal of Count I of the Verified Complaint, alleging violations of the FPA, would be premature at this time. Resolution of this issue will hinge on additional discovery to be undertaken by the parties. Should Defendant wish, at a later time, to renew their contention that they are entitled to judgment as a matter of law with respect to Watchung's FPA claims, it may do so through the filing of a motion for summary judgment.

a claim for which relief may be granted. *See* FED R. CIV. P. 12(b)(6). For the reasons set forth below, and in consideration of the parties' submissions and the arguments presented therein and at the conference convened before the Court on October 16, 2014, and for good cause shown, Nestlé's cross-motion to dismiss is hereby denied.

Simply stated, the Court concludes that, taken as true, the allegations contained in the Verified Complaint with respect to the claims for violation of the FPA, breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking declaratory and injunctive relief, as well as damages, are sufficiently well-plead to withstand a motion to dismiss. *See* FED. R. CIV. P. 12(b)(6). Taking Plaintiff's allegations as true, there is a plain and clear statement of each count that sets forth a plausible entitlement to relief. Accordingly, the motion to dismiss Counts I, II, III, and V of the Verified Complaint is hereby denied. However, for the reasons set forth below, Court IV of the Verified Complaint, in which Watchung asserts a cause of action for tortious interference with business advantage, is dismissed with prejudice.

A claim of tortious interference with business advantage requires proof of "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Graco Inc. v. PMC Global, Inc.*, Civ. No. 08-1304, 2012 WL 762448, at *16 (D.N.J., March 6, 2012) (quoting *Varallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996)). Nestlé asserts that this claim must fail because, *inter alia*, Watchung has failed to allege facts sufficient to make out the elements of the cause of action. Specifically, Watchung has failed to allege any conduct on the part of Nestlé evidencing malice.

In order to constitute tortious interference, Watchung's must have acted both intentionally and with malice. Malice is evinced by actions that are "transgressive of generally

accepted standards of common morality or of law." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 306 (N.J. 2001)). Having conducted a careful review of the Verified Complaint, the Court concludes that Watchung has failed to adequately plead facts corroborative or suggestive of malice, or the type of wrongful or duplicitous conduct that is required for a valid cause of action for tortious interference with business advantage. Rather, Watchung has simply plead, in seemingly conclusory fashion, that "[t]hrough the unlawful and malicious conduct described [elsewhere in the Verified Complaint], Nestlé is attempting to intentionally and maliciously interfere with Watchung's prospective economic advantage." (VC at ¶ 108.)

Having carefully considered the Verified Complaint, the parties' moving papers, and the parties' arguments at the October 16, 2014 conference, the Court concludes that there are no facts on the record to support a cause of action for tortious interference with business advantage. Simply stated, Plaintiff attempts to present what appears to be either a claim sounding in breach of contract or violation of the FPA in the clothing of a tort. Moreover, given the conspicuous lack of supporting facts, the Court concludes that any amendment to the Verified Complaint in an attempt to cure this deficiency would be futile.[2] "Accordingly the Court finds that the interests implicated by the facts alleged in this matter, and which Watchung seeks to vindicate through the bringing of this action, are more properly protected by claims sounding in contract,

---

[2] In determining a motion for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3rd Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90F.3d 617, 623 (1st Cir. 1996).

as opposed to tort, law.  As such, Count IV of the Verified Complaint is hereby dismissed with prejudice.

     Therefore, that portion of Nestlé's cross-motion that seeks to have dismissed Watchung's claim of tortious interference with business advantage, as set forth in Count IV of the Verified Complaint, is hereby granted with prejudice.

**ORDER**

The Court, having carefully considered the submissions of the parties, as well as the arguments presented therein and at the October 16, 2014 conference convened before the Court, and for the reasons set forth above, and for good cause shown,

IT IS on this 23rd day of October, 2014,

**ORDERED** that Plaintiff Watchung's application by order to show cause for a preliminary injunction be, and hereby is, DENIED without prejudice; and it is further

**ORDERED** that Defendant Nestlé's cross-motion to dismiss be, and hereby is, GRANTED with prejudice with respect to Count IV of the Verified Complaint, and DENIED with respect to Counts I, II, III, and V of the Verified Complaint.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.